STATE of Missouri,
Plaintiff/Respondent,

v.

Jeffrey BOURRAGE,
Defendant/Appellant.

No. ED 85476.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 8, 2005.

700

Gwenda Renee' Robinson, St. Louis, MO, for Appellant.

Shaun J. Mackelprang, Ronald Salvatore Ribaudo, co-counsel, Jefferson City, MO, for Respondent.

SHERRI B. SULLIVAN, J.

*Introduction*

Jeffrey Bourrage (Defendant) appeals from a judgment of conviction of possession of a controlled substance and unlawful use of a weapon. Defendant alleges the trial court plainly erred in failing to *sua sponte* strike portions of the prosecutor's rebuttal closing argument, failing to declare a mistrial, or in the alternative, failing to hold an investigative hearing on alleged juror misconduct, finding him to be and sentencing him as a persistent offender, and entering a written sentence and judgment that materially differed from the court's oral pronouncement of sentence. We affirm and remand for further proceedings.

*Factual and Procedural Background*

Defendant does not challenge the sufficiency of the evidence to support his conviction. Viewed in the light most favorable to the verdict, the evidence adduced at trial reveals the following. On August 7, 2002, police officer Thomas Kranz (Kranz) pulled over a car that did not have a rear license plate or a temporary tag. Defendant was driving the car. As Kranz got out of his car, he saw Defendant bend over, placing himself out of Kranz's sight, and then pop up to an upright position. Suspecting Defendant was trying to conceal contraband or a weapon, Kranz asked Defendant to get out and go to the back of his car, which Defendant did.

Kranz asked Defendant if he was carrying a weapon or if there was a weapon in his car, to which Defendant replied, "Nothing in the car." Kranz patted down Defendant for weapons. While patting down the exterior of Defendant's shoes, Kranz felt the outline of a handgun. Kranz handcuffed Defendant; removed the concealed handgun, a functioning .22 caliber revolver loaded with four live rounds; arrested Defendant for unlawful use of a weapon and carrying a concealed weapon; and advised Defendant of his *Miranda* rights. Subsequently, Kranz found two chunks of crack cocaine in a baggie in Defendant's pants pocket.

At the time of his arrest, Defendant was on probation for two prior felony convictions, one for unlawful possession of a weapon (Cause Number 011–1561) and one

for knowingly burning or exploding (Cause Number 011–3243).

Defendant was charged by information as a prior and persistent offender with possession of a controlled substance (Count I), a class C felony in violation of Section 195.202,[1] and unlawful use of a weapon (Count II), a class D felony in violation of Section 571.030.1(1). The case proceeded to a jury trial.

At trial, Defendant testified in his own defense. Defendant denied having possession of either the gun or the drugs and suggested that the items belonged to a pregnant passenger in the car whom Kranz did not arrest. Subsequently, the jury found Defendant guilty as charged.

Defendant filed a motion for judgment of acquittal at the close of the State's evidence and at the close of all the evidence and a motion for new trial. The trial court denied all three motions. The trial court entered a judgment in accordance with the jury verdict and sentenced Defendant as a prior and persistent offender to eleven years' imprisonment on Count I and four years' imprisonment on Count II. During the sentencing hearing, the trial court pronounced that the sentences for Counts I and II were to run concurrent with each other. However, the written sentence and judgment indicates that Count II is to run consecutive to Count I. During the sentencing hearing, the trial court also pronounced that the sentences in this case were to run concurrent with the sentences imposed in Cause Number 011–1561 and Cause Number 011–3243 in the Circuit Court of the City of St. Louis. The written sentence and judgment supports this pronouncement.

*Discussion*

■■■ Defendant raises four points on appeal, each of which seeks plain error review. A claim not properly preserved for appellate review may be considered for plain error at our discretion. Rule 30.20.[2] Under this standard, reversal requires a plain error affecting a substantial right that results in manifest injustice or miscarriage of justice. *Id.* Plain errors are evident, obvious, and clear, and we determine whether such errors exist based on the facts and circumstances of each case. *State v. Johnson*, 150 S.W.3d 132, 136 (Mo. App. E.D.2004). Plain error review is to be used sparingly. *State v. Knese*, 985 S.W.2d 759, 770 (Mo. banc 1999). A defendant bears the burden of demonstrating manifest injustice or miscarriage of justice. *State v. Tokar*, 918 S.W.2d 753, 770 (Mo. banc 1996).

In his first point on appeal, Defendant argues that the trial court plainly erred in failing to *sua sponte* strike portions of the prosecutor's rebuttal closing argument.

■■■ To reverse a conviction under plain error review on a claim of improper closing argument, a defendant must establish not only that the argument was improper, but also that it had a decisive effect on the outcome of the trial and would amount to a manifest injustice or miscarriage of justice if the error was left uncorrected. *State v. Jones*, 128 S.W.3d 110, 113 (Mo.App. E.D.2003). For an argument to have had a decisive effect, there must be a reasonable probability that, in the absence of the argument, the verdict would have been different. *State v. Williams*, 145 S.W.3d 874, 878–879 (Mo. App. E.D.2004). Statements made during closing argument rarely amount to plain error. *Jones*, 128 S.W.3d at 113. We

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. All rule references are to Mo. R.Crim. P.2005, unless otherwise indicated.

especially hesitate to find plain error in the context of closing argument because the decision to object is often a matter of trial strategy, and in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention. *State v. Edwards*, 116 S.W.3d 511, 536 (Mo. banc 2003).

■ Defendant objects to the following comments made during the prosecutor's rebuttal closing argument.:

Now, Ladies and Gentlemen, I don't know why the defendant had the gun, but you can use reason and common sense to figure that guns and drugs go hand in hand. Maybe he's a drug dealer. I don't know and I'm not asserting that. Maybe he had it to protect himself while he made sales. Maybe he's a drug user and maybe he doesn't like dealing with the type of people he has to go to to get the type of items he had. Maybe he just likes guns. I don't know and I don't have to prove it.

Ladies and Gentlemen, we don't condone drunk driving in our country because putting someone behind the wheel of an automobile while they're under the influence of alcohol is dangerous. Well, letting someone carry a weapon and crack cocaine is equally as deadly. You may as well just turn him loose because, if you want him going out there smoking crack cocaine and playing with firearms, that's really—that's your call.

. . .

Now, you swore to do a duty. Again, [defense counsel] was right about that. And you have to go back and do your duty. And you have to realize that this isn't some victimless crime. There's three hundred thirty thousand people in this City, Ladies and Gentlemen ... that are involved with the trade that

defendant is involved in for whatever reason in whatever way. Ladies and Gentlemen, these items are small. Do not let their size diminish the importance of what is going on here.

Ladies and Gentlemen, these are just part of a larger problem that are tearing neighborhoods, tearing blocks like the Wells–Goodfellow neighborhood down bit by bit. And, Ladies and Gentlemen, he can come in here and he can tell you whatever he wants, but you have to be reasonable and you have to listen to the believable evidence.

According to Defendant, these comments suggested that Defendant was a drug dealer, that Defendant was one of three hundred thirty thousand people in St. Louis City involved with the drug trade, and that Defendant was part of a larger problem tearing down the neighborhoods. Defendant maintains that the comments were outside the record, implied special knowledge of facts outside the evidence, and appealed to the jury, as a community of conscience, to convict Defendant for a greater, uncharged crime for which Defendant was not on trial.

Assuming the prosecutor's comments were improper, we conclude that Defendant has not met his burden to show that the comments had a decisive effect on the outcome of the trial. We cannot reasonably conclude that the jury ignored Defendant as a witness and impermissibly relied on the prosecutor's "characterizations" of Defendant to determine who they believed, as suggested by Defendant. Rather, we reasonably presume that the jury weighed Kranz's testimony against Defendant's testimony and made a credibility determination, as is their role, to reach their verdict. We also note that the trial court instructed the jury that the attorneys' arguments are not evidence. We presume the jurors followed this instruction. *See State v. Madi-*

*son,* 997 S.W.2d 16, 21 (Mo. banc 1999). Therefore, we cannot reasonably conclude that in the absence of the prosecutor's comments, the verdict would have been different. Thus, the prosecutor's comments did not rise to the level of plain error requiring *sua sponte* intervention by the trial court. Accordingly, the trial court did not plainly err in failing to *sua sponte* strike portions of the prosecutor's rebuttal closing argument. Defendant's point one on appeal is denied.

 In his second point on appeal, Defendant argues that the trial court plainly erred in failing to declare a mistrial, or in the alternative, in failing to hold an investigative hearing on alleged juror misconduct because after the jury had been seated but before it had been sworn, Juror Darren Johnson (Juror Johnson) committed juror misconduct by talking to Defendant about the criminal case for which Defendant was on trial and the State did not affirmatively show that the remaining jurors were not subject to improper influence due to Juror Johnson's misconduct.

The following proceedings took place in chambers the morning after the jury had been seated but before it had been sworn:

THE COURT:.... Mr. Johnson, tell me what happened last night.

JUROR JOHNSON: Well, I don't know. I don't know the fellow. I seen him yesterday.

THE COURT: You're talking about the defendant in the case?

JUROR JOHNSON: Yes.

. . .

THE COURT: So what happened? Did he talk to you last night?

. . .

JUROR JOHNSON: Yes, I talked to him. I didn't know it was him at first.

THE COURT: So what did you talk about?

JUROR JOHNSON: Well, he talked to me about the case.

THE COURT: Talked to you about the case?

JUROR JOHNSON: He shared a little knowledge with me about the case.

THE COURT: What knowledge did he share with you about the case? What do you know about the case? Tell me everything you know about the case right now. I just want to say you're not in trouble. I just want you to be comfortable with that. I just need to know what was said.

JUROR JOHNSON: Whatever. He just told me about the case, about the drugs, that he's in trouble for it, and about what he had and this and that.

THE COURT: Where did you have this conversation with him at? Where were you guys?

JUROR JOHNSON: I was leaving, going home yesterday.

THE COURT: And he saw you outside and told you that?

. . .

JUROR JOHNSON: Yeah, that's a yes.

THE COURT: So were you guys on the courthouse steps?

JUROR JOHNSON: No.

THE COURT: Where were you?

JUROR JOHNSON: We were far away from the building.

THE COURT: Really?

JUROR JOHNSON: [Nodded.]

THE COURT: Was he by himself when he was talking to you?

JUROR JOHNSON: Yeah.

[DEFENSE COUNSEL]: One question, Judge. Mr. Johnson, what was he wearing when you had the conversation with him?

JUROR JOHNSON: A T-shirt on.

[DEFENSE COUNSEL]: What kind of T-shirt?

JUROR JOHNSON: I don't know, just a regular shirt, that's all.

[DEFENSE COUNSEL]: What color was it?

JUROR JOHNSON: It was a white one.

THE COURT: What else did you learn about the case? Did you learn there were some drugs? Did he talk to you about where it happened at?

JUROR JOHNSON: No.

THE COURT: So where did he say the drugs were? Or did he say he didn't have the drugs?

JUROR JOHNSON: Basically, he just said the drugs was (sic) found in the car.

THE COURT: All right. Did he say anything else about a weapon or anything? Or a gun?

JUROR JOHNSON: Oh, yeah, he mentioned something to me about the weapon, too.

THE COURT: What kind of gun did he say it was?

JUROR JOHNSON: He didn't tell me that.

THE COURT: What did he tell you about the gun? Where did he say the gun was found?

JUROR JOHNSON: He just said the weapon was found in the car and there was somebody else riding in the car with him.

THE COURT: All right. Is there anything else you remember?

JUROR JOHNSON: That's it.

THE COURT: Did he ask you not to let us know?

JUROR JOHNSON: He didn't tell me not to let you know. He told me to just keep quiet about it. I didn't think it was necessary for me to be in the court. I don't know the guy, but he knows me.

THE COURT: He knows you?

JUROR JOHNSON: He doesn't know my name but he's probably seen me around the neighborhood before.

THE COURT: All right. Okay, thanks a lot. Do you have any follow-up questions?

[PROSECUTOR]: No.

THE COURT: Any follow-up, [Defense Counsel]?

[DEFENSE COUNSEL]: [Shook head.]

THE COURT: Thank you very much, Mr. Johnson. We appreciate it.

Subsequently, the trial court *sua sponte* removed Juror Johnson from the jury, replaced him with an alternate, revoked Defendant's bond, and denied Defendant's request for a mistrial.[3]

Shortly thereafter, the trial court asked counsel to approach the bench where the court indicated that "there may have been others that have been talked to with respect to this case." Therefore, the court addressed the following to the jury:

> Ladies and Gentlemen, I need to know at this time whether any of you have had any discussions whatsoever with anyone concerning the issues in this case. If so, please raise your hand. Has anyone had any discussions with you, either a juror or anyone else, with respect to any of the issues in this case?

> [No response.]

---

3. The alleged error in this point relied on is not preserved for appellate review because Defendant failed to present it in his motion for new trial. *See Jones*, 128 S.W.3d at 113 (error is not preserved unless it is both objected to throughout trial and included in a motion for new trial).

We conclude that Defendant has not shown that a manifest injustice or a miscarriage of justice resulted from any alleged juror misconduct. Defendant speculates that the communication between Defendant and Juror Johnson could have been observed or overheard by other jurors. However, the evidence reveals that the communication occurred "far away" from the courthouse and that Defendant was alone when he approached Juror Johnson. The evidence also suggests that Juror Johnson was alone when Defendant approached him. Defendant also speculates that Juror Johnson may have conveyed the contents of the communication to other jurors. However, the trial court instructed both the venire panel and the seated jury that they were not to discuss the case amongst themselves, and we presume that Juror Johnson followed these instructions. *See Madison*, 997 S.W.2d at 21. Further, after promptly removing Juror Johnson from the jury the morning after the communication, the trial court asked the jurors whether any of them had had discussions with anyone about the case, and no juror responded in the affirmative. Plain errors are evident, obvious, and clear. We find none here.

Accordingly, the trial court did not plainly err in failing to declare a mistrial, or in the alternative, in failing to hold an investigative hearing on alleged juror misconduct. Defendant's point two on appeal is denied.

■ In his third point on appeal, Defendant argues that the trial court plainly erred in finding him to be a persistent offender under Section 558.016 and in enhancing his punishment in the absence of evidence showing that Defendant's two prior felony convictions occurred at different times and that Defendant was represented by counsel or validly waived counsel at the proceedings resulting in his two prior felony convictions.

■ Plain error review is appropriate where it appears a defendant has been improperly sentenced as a prior or persistent offender. *Johnson*, 150 S.W.3d at 136. Section 558.016.3 defines a "persistent offender" as "one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times."

■ Section 558.021.1 provides in relevant part that a court shall find a defendant to be a persistent offender if: (1) the information pleads all essential facts warranting a finding that the defendant is a persistent offender; (2) evidence is introduced that establishes sufficient facts pleaded to warrant a finding beyond a reasonable doubt that the defendant is a persistent offender; and (3) the court makes findings of fact that warrant a finding beyond a reasonable doubt by the court that the defendant is a persistent offender. Among the facts the state must prove is that the defendant was represented by counsel at the proceedings on the convictions or that the defendant was advised of that right and voluntarily waived it. *State v. Russ*, 945 S.W.2d 633, 634 (Mo.App. E.D.1997). The state must prove a defendant's status as a persistent offender beyond a reasonable doubt. *State v. Dixon*, 24 S.W.3d 247, 250 (Mo. App. E.D.2000).

In the information, the State alleged:

Defendant is a prior offender under Section 558.016. Defendant is also a persistent offender and is punishable by sentence to an extended term of imprisonment under Sections 558.016 and 557.036 in that Defendant has pleaded guilty to, been found guilty of, or been convicted of two or more felonies com-

mitted at different times. The felonies are as follows:

On January 24, 2002, [D]efendant pled guilty to the felony [u]nlawful possession of a weapon (011–1561) in the Circuit Court of the City of St. Louis, State of Missouri, and

On January 24, 2002, [D]efendent pled guilty to the felony of [k]knowingly burning or exploding (011–3243) in the Circuit Court of the City of St. Louis, State of Missouri.

At trial during direct examination, Defendant testified as follows regarding his two prior felony convictions:

Q. You have some prior convictions, don't you?

A. Yes, sir.

Q. You've got two of them, right?

A. Yes, sir.

Q. You've pled guilty to unlawful possession of a weapon on 1/24/02, right?

A. Yes, sir.

Q. You got a seven-year suspended execution of sentence?

A. Yes, sir.

Q. Two years probation?

A. Yes, sir.

Q. On that same day, 1/24/05, you also pled guilty to knowingly burning or exploding, right?

A. Yes, sir.

Q. And you got a five-year suspended execution of sentence, right?

A. Yes, sir.

Q. And you got two years probation?

A. Yes, sir.

At trial during cross examination, Defendant testified as follows regarding his two prior felony convictions:

Q. Now, you got probation on your first two cases, right?

A. Uh-huh.

After submission to the jury, the trial court found the following:[4]

We're on the record with respect to the defendant's prior felony history. The defendant testified under oath and this court finds the testimony to be an admission that, under Cause Number 011–3243, defendant pled guilty to the crime of knowingly burning and/or exploding. Thusly, the court finds that the plea of guilty occurred on or about March 14, 2002. The court finds that the defendant was sentenced to five years in the Missouri Department of Corrections; however, the execution of sentence was suspended and defendant was placed on probation for a term of two years. The record will further reflect that the crime of knowingly burning or exploding is a Class D felony.

The court further finds beyond a reasonable doubt that this defendant admitted that he had been charged with and pled guilty to the crime of criminal possession of a weapon, a Class C felony, under Cause Number 011–1561. The court finds that this plea of guilty occurred, also, on March 14, 2002. The sentence entered against defendant was a seven-year sentence in the Missouri Department of Corrections; however, that sentence was also suspended and the defendant was placed on probation for a term of two years.

The defendant having admitted as much, this court therefore finds beyond a rea-

**4.** We note that Section 558.021.2 provides in relevant part that the facts warranting a finding that a defendant is a persistent offender are to be found prior to submission to the jury. Although in a footnote Defendant criticizes the trial court for this procedural error, he does not raise the issue in his point relied on nor does he allege any resulting prejudice.

sonable doubt this defendant to be a prior offender for all statutory purposes including court sentencing.

In the trial court's written sentence and judgment, the court found beyond a reasonable doubt that Defendant is a prior and persistent offender.

The trial court based its persistent offender finding on Defendant's admission at trial of having pled guilty to two prior felonies. However, the record, including Defendant's testimony, includes no evidence that the two prior felonies were committed at different times, as required by Section 558.016.3. Defendant's admission establishes that he had two prior felony convictions, but his admission does not establish beyond a reasonable doubt that the felonies were committed at different times. *See Matthews v. State*, 123 S.W.3d 307, 310 (Mo.App. E.D.2003). The State did not present additional testimony or offer into evidence any exhibits demonstrating that the two prior felonies were committed at different times nor did the trial court take judicial notice of the court files for the two prior felony convictions. *See, e.g., State v. Reynolds*, 161 S.W.3d 887 (Mo.App. E.D.2005); *Eakins v. State*, 734 S.W.2d 290, 292 (Mo.App. E.D.1987) (the movant's admission that he had been convicted of two prior felonies was insufficient evidence to show that the felonies were committed at different times without any other evidence to support that conclusion).

 Further, we cannot clearly infer from the record that the two prior felonies were committed at different times. Courts may infer the prior felonies were committed at different times when the record, by reason of dates, geography and the nature of the offenses, in the absence of contrary evidence, supports a finding beyond a reasonable doubt that the prior felonies were committed at different times. *Russ*, 945 S.W.2d at 636. Defendant's two

prior felony convictions occurred in St. Louis City on the same date. *See Id.* (declining to apply the clear inference principle where both offenses occurred in the same city and the convictions came only a month apart). The State argues that Defendant's two prior felony convictions were charged in separate indictments or informations, indicating that they were not part of a common scheme or plan, that is, that they were committed at different times. The State cites Rule 23.05 to support its argument. However, Rule 23.05 provides that "[a]ll offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan *may* be charged in the same indictment or information in separate counts." (emphasis added). Because the rule is discretionary, we cannot clearly infer that Defendant's two prior felony convictions were committed at different times simply because they were charged in separate indictments or informations. We also cannot conclude, as the State argues, that the nature of the two prior felonies creates a clear inference that they necessarily were committed at different times. Therefore, although the two prior felonies may have been committed at different times, the record does not show beyond a reasonable doubt that they were.

 Where a defendant has been improperly sentenced as a prior or persistent offender, a manifest injustice has occurred, and it is plain error. *Dixon*, 24 S.W.3d at 250. From the record before us, we conclude that Defendant was improperly sentenced as a persistent offender because the State failed to offer evidence proving beyond a reasonable doubt that Defendant's two prior felonies were committed at different times. Thus, the trial court plainly

erred in finding Defendant to be a persistent offender under Section 558.016 and in enhancing his punishment.

Accordingly, we vacate Defendant's sentence and remand the case to the trial court for an evidentiary hearing on the issue of Defendant's persistent offender status and for possible resentencing consistent with the outcome of that hearing. On remand, the State may offer any evidence it may have related to Defendant's persistent offender status.[5]

In his fourth point on appeal, Defendant argues that the trial court plainly erred in entering a written sentence and judgment that materially differed from the court's oral pronouncement of sentence in that the written sentence and judgment indicates that Defendant's sentences are to run consecutively with each other whereas the court's oral pronouncement of sentence indicated that the sentences were to run concurrently with each other.

When the written sentence differs from the sentence orally imposed, the oral pronouncement controls unless the record shows the oral sentence is not materially different than the written one or the trial court had no discretion to enter a sentence different from the written one. *State v. Haughton*, 130 S.W.3d 725, 726 (Mo.App. E.D.2004). The State concedes that the trial court plainly erred. However, because we vacated Defendant's sentence under point three, this point is moot.

### Conclusion

The judgment of conviction is affirmed. The case is remanded to the trial court for

further proceedings consistent with this opinion.

NANNETTE A. BAKER, P.J., and ROBERT G. DOWD, JR., concur.

---

5. We note that a defendant's admission at trial of prior convictions may properly be relied upon for purposes of enhancement of punishment notwithstanding the absence of evidence that the defendant was represented by counsel or validly waived counsel at the proceedings resulting in those prior convictions. *State v. Johnson*, 837 S.W.2d 39, 41 (Mo.App. W.D.1992).