**STATE of Missouri, Respondent,**

v.

**Carla Kay CLAY, Appellant.**

**No. WD 66224.**

Missouri Court of Appeals,
Western District.

June 5, 2007.

Margaret Mueller Johnson, Public Defender Office, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Shaun Mackelprang and Roger Johnson, Office of Attorney General, Jefferson City, for Respondent.

RONALD R. HOLLIGER, Judge.

Carla Kay Clay appeals her conviction on two counts of first-degree murder for the deaths of her two infant children. She argues that the trial court abused its discretion in three respects: (1) admitting a picture of her infant daughter, Audrey, with a pacifier held up to her face to demonstrate a possible means of suffocation; (2) permitting expert testimony by a doctor that he was suspicious of her infant son, Randy's, death and allowing her testimony that a teddy bear falling on Randy's face did not explain his death by suffocation; and (3) overruling her objection and request to strike a prosecutor's comment during voir dire. Because we find that the trial court did not abuse its discretion in respect to points one and three, and because she failed to preserve point two for appellate review, we affirm.

## Statement of Facts

On June 8, 2003, police officers received a phone call from Clay's home that a baby was not breathing. When the officers arrived, Clay was crying nearby. Clay told the officers that she had put her son, Randy, to bed the night before and when she checked on him the next morning, she found him lying on his back, arms extended, with a white, twenty-six inch teddy bear lying on top of him. Specifically, the bear's mouth was on Randy's face. The next day, the Child Fatality Review Board (CFRB) ruled the manner of death an accident, determining that the teddy bear had a collapsing nose that could form a 3 to 5 inch pocket over the face of the child.

One year later, on June 21, 2004, police officers were again called to Clay's home because an infant was not breathing. When the officers arrived at the house three women were outside and "fairly hysterical." The baby, Audrey, was limp, her eyes were closed, her skin was pale, her lips were blue, and she had no pulse. Efforts to resuscitate Audrey lasted for almost an hour, but failed. Audrey's pediatrician, Dr. Sayonara Mato, was called to the hospital and noticed bruising on the bridge and tip of Audrey's nose. A search of the house was conducted and some pacifiers were seized. One green pacifier was still in its packaging. It was determined that Audrey's death was caused by mechanical asphyxia using an object, which obstructed her nose and mouth for a period of time causing lack of oxygen supply to the body and, ultimately, death.

Approximately one month later, the coroner in Randy's death filed an affidavit to change the manner on Randy's death cer-

tificate to "homicide." Clay was found guilty of both counts of first-degree murder and was sentenced to life imprisonment without eligibility for probation or parole on both counts.

## Analysis

In her first point on appeal, Clay argues that the trial court abused its discretion in admitting a photograph of a photograph of Audrey with a pacifier held up to her mouth because it did not fairly and accurately represent what it purported to depict and because it was confusing and misleading. In her second point on appeal, Clay argues that the trial court abused its discretion because there was insufficient foundation to permit Dr. Mato's expert testimony that she was suspicious of Randy's death because in her opinion a teddy bear falling on Randy's face did not explain his death. In her final point on appeal, Clay argues that the trial court abused its discretion in overruling her objection to and request to strike the prosecutor's comment during voir dire that some of the emotions the jury would see during the trial "may not, in fact, be genuine" because it was an improper comment on her credibility.

## Photograph of Pacifier

■ Clay argues that the trial court abused its discretion in admitting a photograph of Audrey with a pacifier held up to her mouth by the coroner because it did not fairly and accurately represent what it purported to depict and because it was confusing and misleading.

After Audrey's body had been released, Dr. Valerie Rao, the medical examiner who performed the autopsy, received a green pacifier (still in its original packaging) that the police had seized from the house. Dr. Rao held the pacifier against a life-sized picture of Audrey's face and a photograph

(the exhibit in question) was taken. She concluded that the marks on Audrey's nose were consistent with the pacifier being pressed over Audrey's nose and mouth. She testified that her conclusion did not mean that the pacifier she had was the one that actually caused the injuries; only that the injuries were consistent with the pacifier. She also testified that the picture of Audrey shown with the pacifier was life-sized; however, the exhibit itself was not a life-size photograph of the picture and that the exhibit was not a photograph of the pacifier actually in Audrey's mouth.

■ The trial court enjoys broad discretion in the admission of photographs. *State v. Rousan,* 961 S.W.2d 831, 844 (Mo. banc 1998). The Supreme Court recently set out the proper standard for the admissibility of photographs:

> Photographs are admissible if they accurately and fairly represent what they purport to depict and tend to prove or disprove any elements of the charged offense. They must show relevant facts that will aid the jury. In general, differences in the conditions of the subject depicted between those conditions existing at the time of the crime and those at the time the photograph was taken go to the weight of the evidence, not admissibility. However, photographs in which the different conditions are confusing or misleading should be rejected.

*State v. Jaco,* 156 S.W.3d 775, 778–79 (Mo. banc 2005) (citations omitted).

The exhibit was relevant and it fairly represented what is purported to depict. Dr. Rao used the photograph to explain her conclusion that the marks on Audrey's nose were consistent with a pacifier. This supported a finding that Audrey was killed intentionally by force. The limitations of the photograph now questioned by Clay were explained to the jury both in direct testimony and Clay's cross-examination.

The trial court did not abuse its discretion in finding that the exhibit was not misleading or confusing. Point denied.

### Expert Testimony

■ In her second point on appeal, Clay argues that the trial court abused its discretion in permitting Dr. Mato's expert witness testimony that she was suspicious of Randy's death because in her opinion a teddy bear falling on Randy's face did not explain his death because there was insufficient foundation for this opinion. We decline to address this point on appeal, as it was not properly preserved for appellate review.

Clay filed a motion in limine to exclude Dr. Mato's opinion that she was "suspicious" of Randy's death because the opinion was based on speculation. When Dr. Mato was asked at trial if she had an opinion as to whether a bear falling on Randy's face could have caused his death, Clay objected based on her "previously filed motion in limine to lack of foundation." The objection was overruled. However, as we stated earlier, her previous motion in limine was based on her belief that the testimony was speculation, not lack of foundation.

■ In her objection at trial, Clay did not specify what was lacking in the foundation for Dr. Mato's opinion that the child had sufficient development that he would have been able to push the bear off his face. Clay now contends that because the doctor never saw the bear in question and did not know its weight that she lacked a sufficient foundation to opine that the baby was sufficiently developed and strong to move his head away from the bear if it had fallen upon him. An expert's opinion must generally be based upon facts in evidence and not on assumptions. *State v. Chandler*, 860 S.W.2d 823, 825 (Mo.App.E.D. 1993). However, " '[a] general objection of lack of foundation does not call to the court's attention the aspect of the foundation which is considered lacking. As such it is inadequate to preserve the matter for review.' " *Stewart v. Dir. of Revenue*, 702 S.W.2d 472, 476 (Mo. banc 1986) (quoting *Pazdernik v. Decker*, 652 S.W.2d 319, 321 (Mo.App. E.D.1983)); *see also Refrigeration Indus., Inc. v. Nemmers*, 880 S.W.2d 912, 919 (Mo.App. W.D.1994). This rule exists because many times a deficiency in foundation can be corrected, and the trial court and opposing counsel are entitled to know and understand what the objector claims is missing. Here, Clay did not specify any of the missing foundational elements. She thus gave neither opposing counsel an opportunity to supplement the foundation nor did she give the trial court a specific basis upon which to evaluate the admissibility of the testimony. Point denied.

### Prosecutor's Statement

■ In her final point on appeal, Clay argues that the trial court abused its discretion in overruling her objection to and request to strike the prosecutor's comment during voir dire that some of the emotions the jury would see during the trial "may not, in fact, be genuine" because it was an improper comment on her credibility. The record reflects that Clay was crying when the comment was made.

During voir dire, the following exchange took place:

> MR. AHSENS: Let me ask this question. Given the nature of this case, you may see on the part of numbers of people who testify on the part of the parties, on the part of everybody involved, a good deal of emotion. You understand that that emotion should not be what drives you in your decision. In fact, *some of that emotion*

*may not, in fact, be genuine.* Can you all—

MS. O'KEEFE: Judge, objection. May we approach?

THE COURT: You may approach

(The following proceedings were held at the bench outside the hearing of the venire panel:)

MS. O'KEEFE: Judge, our client is crying right now, and we object to him referring about it being not real. We ask that that be stricken.

MR. AHSENS: Oh, I think if they can't keep their client under control, they can ask for a recess.

Ms. O'KEEFE: It's not a matter of control. The matter is that they're saying over and over she murdered her children.

THE COURT: He's not said it over and over, and it's an emotional thing and I don't think he's going beyond what he should at this stage in the game. Objection at this point is overruled.

The prosecutor continued with voir dire:

MR. AHSENS: Do all of you understand that this, being a very emotional topic, there may be a display of emotions by any number of people associated with the trial of this case? Those emotional displays, whatever they may be and no matter who may make them, they should not be what determine your verdict. The facts and the law should determine your verdict. Can all of you do that?

"Control of voir dire is within the discretion of the trial judge; only abuse of discretion and likely injury justify reversal." *State v. Storey,* 901 S.W.2d 886, 892 (Mo. banc 1995). The record indicates that the challenged comment was part of a legitimate question about whether the jurors could fairly and impartially decide the case in light of the emotion they would see at trial. The comment was not repeated nor exploited. The remark does not rise to the level of prosecutorial misconduct that deprives a defendant of due process; that is, it did not "infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). Point denied.

JOSEPH M. ELLIS, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.