STATE **of Missouri, Respondent,**

v.

Dennis A. **IRBY, Appellant.**

No. ED 87385.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 8, 2008.

Application for Transfer to Supreme Court
Denied May 15, 2008.

Application for Transfer Denied
June 24, 2008.

Michael Gross, St. Louis, MO, for appellant.

Shaun Mackelprang, Jefferson City, MO, Evan Bucchein, Roger Johnson, Co–Counsel, for respondent.

NANNETTE A. BAKER, Judge.

### Introduction

Dennis Irby ("Defendant") was convicted by a jury of murder in the first degree in violation of Section 565.020 and armed criminal action in violation of Section 571.015. Defendant was sentenced to concurrent terms of life imprisonment without possibility of parole. Defendant alleges that the trial court made several evidentiary errors including the admission of videotaped statements of two witnesses; the replaying of those videotapes for the jury during deliberations; the admission of a witness' testimony from a previous trial and the admission of a recorded telephone conversation between Defendant and a witness. We find no error and affirm.

### Factual and Procedural Background

Defendant does not challenge the sufficiency of the evidence to support his conviction. Viewed in the light most favorable to the verdict, the facts are as follows: Lois Sexton and Jeff Sexton ("Victim") were married with one child. Victim's wife, Lois, testified that Victim was violent and often beat and abused her.

Lois fled to a "safehouse" on December 2, 2002. After two days, Victim's parents told Lois that Victim was attending anger management programs and convinced Lois to return to Victim. After Lois returned, Victim refused visitors. Victim moved Lois and their child to a hotel, where he beat her continuously. They returned home and Victim enclosed himself, Lois and the child in the house, screwing the doors shut and hiding the phones to prevent Lois from contacting anyone outside the house. On December 13, Victim beat Lois and threatened to kill her.

On December 14, Lois and the child escaped while Victim was sleeping. She

went to a gas station and called her sister, Lisa Frein, in North Carolina. Ms. Frein purchased plane tickets for Lois and the child. Lois' brother, Robert Hoover ("Mr. Hoover"), drove Lois and the child to the airport. When Lois arrived in North Carolina, she and the child stayed with Ms. Frein. Ms. Frein photographed her injuries. Lois' sister, Laurie, also lived in North Carolina.

After Lois left for North Carolina, Laurie's husband, Dennis Irby ("Defendant") called Lois' brother Mr. Hoover. In Mr. Hoover's statement to police, he stated that Defendant asked him where he could get an untraceable cellular phone and a gun. Mr. Hoover did not procure these items for Defendant, but Ms. Frein procured a pre-paid cellular phone.

Mr. Hoover testified that Defendant traveled to St. Louis from North Carolina and they met in a parking lot on December 19. Mr. Hoover took Defendant to Lois' car, which Mr. Hoover had parked in a public parking lot near his house. Mr. Hoover testified that he saw Defendant again on December 22. In a written statement to police, Mr. Hoover said that Defendant put on gloves and test fired a gun on December 22. However, at trial, Mr. Hoover said that his statement was coerced and that Defendant did not put on gloves or test fire a gun.

On December 28, Defendant called Mr. Hoover from North Carolina and asked him to move Lois' car because he would be returning to St. Louis and he needed the car. In Mr. Hoover's statement to police, he said that Defendant called him in the morning on December 29 and told him "It's done," and to move Lois' car. When Mr. Hoover went to retrieve Lois' car, it was in a different spot than where he had parked it before.

On December 31 Victim's parents found Victim's body in his house, lying in a pool of blood on the kitchen floor, with a can of soda in his hand. The autopsy revealed that Victim had been dead one to three days. Victim died from two bullet wounds to the head, fired from a .22 caliber rifle. In Mr. Hoover's statement to police, he stated that his father, Ervell Hoover, had given Dennis Irby a .22 caliber rifle. Police seized a .22 caliber rifle, .22 caliber ammunition and a cleaning kit from Ervell Hoover's home.

Mr. Hoover was taken in for questioning. He talked with police and eventually submitted a written statement. He also allowed the police to take a videotaped statement. At the direction of the police officers, Mr. Hoover also made a call to Defendant while at the police station. He pretended that he had already left the police station and asked Defendant questions given to him by the officers. The purpose of the recorded call was to induce Defendant to make incriminating statements.

At trial, Prosecutors sought to introduce the videotaped statement made by Mr. Hoover in order to impeach his testimony that he was coerced into writing falsities in his statement because the police threatened his wife and child. However, Mr. Hoover acknowledged during his testimony that his demeanor appeared calm on the video. Defendant objected to the introduction of the videotaped statement on the grounds that Mr. Hoover had already been impeached and Mr. Hoover already told the jury that he appeared calm in the video. The court overruled Defendant's objection and admitted and played the videotaped statement.

During trial, the State also played the audio recording of the conversation between Mr. Hoover and Defendant recorded at the police station during Mr. Hoover's questioning. Defense counsel objected

that an inadequate foundation was made for the recording, and the objection was overruled.

Lisa Frein did not appear at the trial to testify. Instead, the State introduced a transcript of Ms. Frein's testimony from Defendant's earlier trial.[1] The State obtained a certificate pursuant to Section 491.420 identifying Ms. Frein as a necessary and material witness and requesting that a North Carolina court compel her testimony. North Carolina refused to compel her appearance. The State introduced an uncertified order stating that a North Carolina court denied the Section 491.420 request. Defense counsel objected to the introduction of the transcript on the grounds that the State failed to make an adequate showing of its efforts to obtain Ms. Frein's appearance and that the North Carolina order was uncertified. The court overruled the objection and admitted the transcript.

The State also introduced at the same time a videotaped statement that Ms. Frein made to police.

During deliberation, the jury asked to see the videotaped statements again. The court granted the request over defense counsel's objections. The jury found Defendant guilty of first-degree murder and armed criminal action. The court sentenced Defendant to concurrent terms of life imprisonment without parole. Defendant appealed.

On appeal, Defendant raises six points. In his first point, Defendant contends that the trial court erred in overruling Defendant's objection to the introduction of Mr. Hoover's videotaped statement. In his second point, Defendant claims that the trial court erred in replaying the statement to the jury during deliberations. In

his third point, Defendant argues the trial court erred in overruling Defendant's objection to the introduction of Ms. Frein's videotaped statement. In his fourth point, he contends that the trial court further erred in replaying the statement to the jury. In his fifth point, Defendant contends that the trial court erred in admitting Ms. Frein's prior testimony because the prosecution did not demonstrate that it had exercised reasonable diligence to secure her presence at trial. Finally, Defendant argues that the trial court erred in overruling Defendant's objection to the recorded evidence of his telephone conversation with Hoover because there was inadequate foundation for the admissibility of the recording.

### Standard of Review

We review a trial court's admission of evidence for abuse of discretion. *State v. Smith*, 136 S.W.3d 546, 550 (Mo. App. W.D.2004). A trial court's decision to admit evidence is an abuse of discretion when it is clearly against the logic of the circumstances then before the court, and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. *Id.*

### Mr. Hoover's Videotaped Statement

Defendant's first and second points involve Mr. Hoover's videotaped statement. We consider these points together. In his first point, Defendant argues that the trial court erred in admitting the videotape. More specifically, Defendant argues that the statement was not relevant to Mr. Hoover's credibility and its admission improperly bolstered his direct testimony regarding statements he had made to police. In his second point, Defendant argues that

---

1. Defendant was tried in February 2005 for the same charges, murder and armed crimi-

nal action. The trial ended in a mistrial because of a hung jury.

the trial court erred in replaying this statement to the jury.

On January 1, Mr. Hoover was brought to the police station where he wrote a statement and made a statement on videotape which contained information incriminating Defendant. At trial, Mr. Hoover testified that the written statement contained falsities. He testified that police officers were threatening him, his wife and child and coerced him to make the false statements. During direct examination, the State questioned Mr. Hoover line-by-line about the written statement, asking which parts Mr. Hoover was claiming were true and which parts Mr. Hoover claimed were false and coerced by police.

The State then asked Mr. Hoover about the videotaped statement that was recorded at the police station. Mr. Hoover testified that the officer asked him questions, which he answered, but he did not go over the written statement "word for word." He stated that the videotape contained "truth and lies." He testified that he was coerced into making false statements on the videotape, like in the written statement. He also testified that that he appeared calm in the videotape. The State then, over objection, introduced the videotape for the purposes of showing Mr. Hoover's demeanor in that he appeared calm and his answers appeared spontaneous and unrehearsed.

▇▇▇ Before we reach this point, however, we must address the State's argument that Defendant failed to preserve these claims for review, and that we should review under plain error. To preserve an alleged error, a party must make a timely and specific objection at trial. *State v. Baker*, 23 S.W.3d 702, 713 (Mo.App. E.D. 2000). The objection cannot be broadened by arguing a new theory on appeal. *State v. Brooks*, 158 S.W.3d 841, 854 (Mo.App. E.D.2005). Here, The State argues that

Defendant objected at trial that the videotape was "improper impeachment" but did not argue that it was "bolstering."

The following exchange took place during the trial:

Mr. Hoover: If you want to say my demeanor on the tape is that I'm calm, yes, I'm calm. I appear relaxed. I've been up for twenty-four hours, more than that by this time actually. I've been in police custody for about nineteen of those, and I believe this is the last thing that I had to do and I'm walking out the front door to see my wife, give her a big hug and go home.

. . .

Prosecutor: I have the video taped statement I'd like to introduce and play for the purpose of showing his demeanor

. . .

Court: He also said his demeanor is calm, he appears to be relaxed, there's no reason. He's already told the jury how he appears. What do you expect to get if the information—the same information contained on the statement?

Prosecutor: Well, can we approach side bar?

Court: Yeah.

Prosecutor: Judge, I don't believe that I'm bound by his response that he appears calm. I think that once the existence of the video tape showing it is shown, that permits it.

Court: Why did you ask that question, Ed? Why did you ask that question.

Prosecutor: Because I thought that's part of the framework for the foundation to get this tape shown.

Court: The foundation is him saying I was scared to death those people were intimidating.

Prosecutor: And he said that.

Court: And you want to play the tape to show that's not true, and that's how it came in the last time.[2]

Prosecutor: And that's what he said here, too. He said he was scared shitless and he gave the statement in a calm manner, but I think that the video shows it better than his words can describe and that's why I'm offering it. Plus it's prior inconsistent statements, he's admitted that once we show the existence of the statement's it's allowed to be introduced.

Court: He's already admitted to the prior—he's already admitted to the prior

. . .

. . .

Defense attorney: He wants to use it for improper impeachment, he hasn't denied the statements. He can ask him if he made the statement, he admits it.

. . .

Prosecutor: I want to introduce this and play this statement . . . that he contends was contrived and coerced out of him really is spontaneous and the truth . . . he's not coerced and intimidated to making lies. That's the way he's depicted on the video and it's spontaneous and calm.

Defense: He wants to use it for improper impeachment, he hasn't denied the statements. He can ask if he made the statements, he admits it.

Prosecutor: And it also goes to show his interaction with Cintel, and Cintel's not threatening him in any fashion.

. . .

The court: I am going to let you play it. I shouldn't but I'm going to.

Prosecutor: For the purpose of showing demeanor . . . And it shows spontaneity, it shows that he's likely telling the truth.

Later, the trial court stated "Well, here again what we've been going through the last hour and a half, and listening to the same stuff for three hours instead, but we're going to do it."

■ To preserve an evidentiary question for appeal, counsel must make an objection at the time the evidence is sought to be introduced and the same objection must be carried forward on appeal. *State v. Hoy*, 219 S.W.3d 796, 809 (Mo. App. S.D.2007). The purpose of the specific objection requirement is so that the trial court can make a "reasoned and informed ruling." *Id.* Immediately after the State sought to introduce the videotape, the trial court discussed the difficulties of admitting the evidence with the parties before making the ruling. The record shows that the trial court considered the bolstering effect of the evidence, as it stated that they would be "listening to the same stuff for three hours instead." Although Defense counsel did not use the word "bolstering," the trial court and attorneys discussed whether the prosecutor could play the videotape even though the prosecution witness had already testified about all the statements that appeared in the in the videotape and had testified his demeanor was calm. This was essentially an argument over the possible bolstering effect of the videotape. Thus, we find that the record demonstrates that trial court had an opportunity to make a reasoned and informed ruling as to whether the evidence was admissible and the issue is properly preserved for our review.

■ The State also argues that Defense counsel's objection against sending the videotape to the jury was not preserved. No record was made at this portion of the trial. Although there is a record of certain items requested, there is no record of the request to view the videotapes or to hear the audiotape. After the verdict was re-

2. Referring to Defendant's previous trial on the same charges, which ended in a mistrial.

turned, Defense counsel sought to make a record by clarifying that Defendant had objected to all of the exhibits, including the replaying of the videotapes. The court acknowledged Defense counsel's objections.[3] The State raised no objection to Defense counsel's clarification of the objections or the Court's acceptance of it. On appeal, however, the State argues that *if* Defendant had objected, the objection would not have been sufficiently specific to preserve this error for our review.

■ It is a better practice to make a proper record, rather than to attempt to create a record after the fact. However, because that was not done, we must make a preservation determination based on the circumstances in this case. Here, the court accepted Defendant's attempt to make a record and the State did not object. We find that the objection was preserved for our review.

■ Now we move on to Defendant's first point. Evidence in Missouri must be both logically and legally relevant to be admissible. *See State v. Driscoll,* 55 S.W.3d 350, 354 (Mo.2001). "Evidence is logically relevant if it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial, but it is legally relevant only if its probative value outweighs its prejudicial effect." *Id.* (Internal quotations omitted). Under Section 491.074, prior inconsistent statements are admissible *as substantive evidence* and the party offering the inconsistent statement may offer the truth thereof. *See State v. Neely,* 979 S.W.2d 552, 559–60 (Mo.App. S.D.1998).

■ Defendant argues that the videotaped statement was not relevant to the issue of Mr. Hoover's credibility. We dis-

agree. Although Mr. Hoover admitted to making certain incriminating statements to the police, Mr. Hoover testified at trial that these statements were false and coerced by police. We find this case strikingly similar to *Neely.* In *Neely,* a witness's preliminary hearing testimony was read to the jury because the witness died before the trial. *Neely,* 979 S.W.2d at 556. The witness had made tape-recorded statements that incriminated the defendant. *Id.* at 560. During his testimony, the witness suggested that tape-recorded statements incriminating the defendant were false and coerced by police. *Id.* at 560. The witness was questioned and cross-examined regarding "the substance and contents of his tape-recorded statements to law enforcement officers." *Id.* at 559. The trial court admitted the tape-recorded statements, and the appellate court affirmed. *Id.* The court found "Inasmuch as [the witness] suggested in his preliminary hearing testimony that he was coerced by law enforcement officers into making the statements that implicated [the] [d]efendant ... the tape-recorded statements better enabled the jury to resolve this claim." *Id.* The court further stated that they acknowledged defendants' protection against "unnecessary and duplicative bolstering" but found that the trial court did not abuse its discretion in admitting the tape-recorded statements. *Id.*

Similarly, we find that Mr. Hoover's videotaped statement was relevant to enable the jury to determine if his trial testimony or the videotaped statement was the truth. The videotape showed Mr. Hoover's interaction with the officers and the spontaneity of his statements, or lack thereof. Thus, the evidence was logically relevant, as it tended to show which of Mr.

---

**3.** Although the court stated that it did not recall the objection to the videotape, it none-

theless accepted this clarification.

Hoover's statements were truthful. *See, Driscoll,* 55 S.W.3d at 354.

The evidence was also legally relevant, in that the probative value outweighed the prejudicial effect. Defendant argues that the evidence was highly prejudicial because it had already been presented to the jury during direct examination, which resulted in impermissible bolstering of Mr. Hoover's testimony.

Indeed, the Missouri Supreme Court has recognized that an undue advantage may be had when a party may present the same testimony in multiple forms. *State v. Seever,* 733 S.W.2d 438, 441 (Mo.1987). Thus, when a witness testifies from the stand, it would be improper to also read the witness's consistent deposition testimony. *Id.*

■ However, here the videotaped statement was not consistent with Mr. Hoover's trial testimony. At trial Mr. Hoover testified to facts that were contained in the videotape, but a great deal of his trial testimony concerned how the police had coerced him and in what way the written and videotaped statements were false. Thus, the videotape impeached his in-trial testimony that he was coerced by police, by showing his demeanor and interaction with the police during his questioning. Therefore, the videotape was admissible under Section 491.074 as a statement inconsistent with his in-trial testimony that he was coerced and threatened by police.[4]

Defendant argues that he was prejudiced because the State referred to the videotape evidence as "the truth" throughout its closing argument. However, Missouri caselaw holds that the State has a statutory right to argue the truth of the statements contained in the videotaped and written statements, because they were admissible as substantive evidence under Section 491.074. *See Neely,* 979 S.W.2d at 559–60. The probative value of this evidence outweighs any prejudice Defendant may have suffered, therefore, this evidence was also legally relevant. We find that the court did not abuse its discretion in admitting the videotape.

■ In his second point, Defendant contends that the trial court erred in replaying Mr. Hoover's videotaped statement during jury deliberations because it was not relevant evidence and impermissibly bolstered Mr. Hoover's testimony. Above, we determined that the videotaped statement was properly admitted into evidence. When an exhibit is properly admitted into evidence, it is within the sound discretion of the trial court whether the exhibit will be shown to the jury during deliberations. *State v. Skillicorn,* 944 S.W.2d 877, 896 (Mo.1997). The trial court did not send the videotape to the jury room, but controlled the jury's access to the videotape by playing it in the courtroom only once. Thus, the trial court did not abuse its discretion in allowing the jury to view the videotape during deliberations.

Points I and II are denied.

### Ms. Frein's Statements

■ In his third point, Defendant argues that the circuit court erred in overruling his objection to the introduction of Ms. Frein's videotaped statement because the recording was not relevant to the issue of her credibility and improperly bolstered her direct testimony. During trial, the

---

4. Perhaps the videotape would not have been admissible to impeach his testimony regarding the content of the inconsistent statements, such as whether or not Defendant fired a gun during one of his visits, as Mr. Hoover did admit he made those inconsistent statements. However, impeaching Mr. Hoover's testimony that he was coerced and threatened by police is a distinct issue.

court read a transcript of Ms. Frein's testimony from Defendant's previous trial. At the previous trial, the State played a videotape of a statement Ms. Frein made to police. While reading her testimony, the State again played the videotape. It appears from the record that the parties stipulated that the objections and rulings from this portion of the transcript of the first trial carried over to this trial.[5] At the first trial, the only objection to Ms. Frein's videotaped statement was Defense counsel's statement "But the proper foundation hasn't been laid, Judge." This objection, however, is insufficiently specific to preserve anything for our review. A general objection to foundation does not call the attention of the court to the foundational aspects considered lacking. *State v. Clay*, 225 S.W.3d 462, 465 (Mo.App. W.D.2007). Thus, it is inadequate to preserve the matter for review. *Id.* Unlike the situation with Mr. Hoover's video, there is no discussion on the record regarding anything more specific than the objection set out above. Thus, we find that this objection has not been preserved for our review.

 A claim not properly preserved for appellate review may be considered for plain error at our discretion. Rule 30.20.[6] Under this standard, we reverse only if a plain error affecting a substantial right results in manifest injustice or miscarriage of justice. *State v. Bourrage*, 175 S.W.3d 698, 701 (Mo.App. E.D.2005). A defendant bears the burden of demonstrating manifest injustice or miscarriage of justice. *Id.* Plain errors are evident, obvious, and clear; we determine whether such errors

exist based on the facts and circumstances of each case. *Id.*

 The plain error rule is to be used sparingly and does not justify review of every point that has not been properly preserved. *State v. Johnson*, 150 S.W.3d 132, 136 (Mo.App. E.D.2004). A request for plain error review triggers the commencement of a two-step analysis by an appellate court. *State v. Campbell*, 122 S.W.3d 736, 740 (Mo.App. S.D.2004). The first step of this analysis is to determine whether the asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. *Id.* If facially substantial grounds are found to exist, the appellate court should then move to the second step of this analysis and engage in plain error review to determine whether manifest injustice or a miscarriage of justice has actually occurred. *Id.* If facially substantial grounds are not found to exist, the appellate court should decline to exercise its discretion to review the claim of plain error pursuant to Rule 30.20. *Id.* To find manifest injustice, we must find that the trial court's error in admitting the evidence was outcome determinative. *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006)

 Here, we do not find facially substantial grounds for believing a manifest injustice or miscarriage of justice occurred because the videotape was properly admitted into evidence. In testimony similar to that of Mr. Hoover, Ms. Frein claimed that the police threatened her and her family to cause her to lie in her written statement. She stated that the officers threatened her

---

**5.** Although the videotape was played for the jury, there was no ruling by the court admitting it into evidence. However, after the fact, the State attempted to clarify the stipulation regarding the rulings from the previous trial and put on record that the videotape was

admitted according to such a stipulation. Because all parties and the court treat the videotape as admitted, so do we.

**6.** All rule references are to Mo. Rules Crim. P.2000, unless otherwise indicated.

with the loss of her son and told her that her son was missing and they would help her find him if she finished the statement. She testified extensively that she was coerced into making the statement and that the police had "suggested" certain things for her to include. As with the videotape of Mr. Hoover, Ms. Frein's videotape was admissible to impeach her testimony that she was threatened and coerced into making false statements. We therefore decline to review this point for plain error. Point denied.

In his next point, Defendant argues that the trial court erred in overruling Defendant's objection to the replaying of Ms. Frein's statement during the jury deliberations. Defendant argues that the videotape improperly bolstered evidence against him.

When an exhibit is properly admitted into evidence, it is within the sound discretion of the trial court whether the exhibit will be shown to the jury during deliberations. *Skillicorn*, 944 S.W.2d at 896. Above, we determined that Ms. Frein's videotaped statement was properly admitted into evidence. The trial court, therefore, had discretion to allow the jury to see the statement again during deliberations. As with Mr. Hoover's statement, the trial court controlled the jury's access to the videotape by playing it in the courtroom only once. We therefore find that the trial court did not abuse its discretion in allowing the jury to view the videotape during deliberations. Point denied.

■■■ In his fifth point, Defendant argues that the trial court abused its discretion in overruling his objection to the reading of Ms. Frein's testimony into evidence because the State failed to demonstrate that it had exercised reasonable diligence to secure Ms. Frein's presence at the second trial.

■■■ The right of confrontation and cross-examination is an essential requirement for a fair trial. *State v. Murphy*, 592 S.W.2d 727, 732 (Mo.1979). An exception exists, however, where a witness is unavailable and has given testimony at a previous judicial proceeding against the same defendant, and the witness was subjected to cross-examination by the defendant. *Id.* To prove unavailability of a witness, the prosecution has the burden to prove a good faith effort, exercising reasonable diligence, to obtain the presence of the witness. *State v. Glaese*, 956 S.W.2d 926, 931 (Mo.App. S.D.1997). This burden is satisfied if the prosecution makes use of an out-of-state subpoena, such as that provided for in Section 491.400 *et. seq. Id.*[7] We review a trial court's finding that the prosecution has made a good faith effort to bring a witness to trial for an abuse of discretion. *State v. Williams*, 554 S.W.2d 524, 534 (Mo.App. S.D.1977).

Here, the State obtained a certificate from the trial court asking a North Car-

---

7. 491.420. Witness from another state summoned to testify in this state

 1. If a person in any state . . . is a material witness in a prosecution pending in a court of record in this state . . . a judge of such court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. The certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this state to assure his attendance in this state. This certificate shall be presented to a judge of a court of record in the county in which the witness is found.

 2. If the witness is summoned to attend and testify in this state he shall be tendered by the treasurer of the county in which the prosecution is pending the sum of ten cents a mile for each mile by the ordinary traveled route to and from the court where the prosecution is pending, and fifteen dollars for each day that he is required to travel and attend as a witness . . .

olina court to issue a summons directing Ms. Frein to appear. The North Carolina court refused to order Ms. Frein to appear, and entered an order to that effect. Defendant argues multiple reasons why the certificate obtained by the State did not constitute due diligence.

First, Defendant offers a conclusory argument that the State did not exercise due diligence because it did not send someone to North Carolina to argue for Ms. Frein's appearance. Defendant cites no authority to support this proposition, and we reject the implication that, to satisfy due diligence, the State must send someone personally to argue for the appearance. Next, Defendant argues that the certificate was improper because it did not state the number of days Ms. Frein would be required to appear. Defendant did not make either of these arguments before the trial court when he objected to Ms. Frein's testimony.

Indeed the statute does state that the court may issue the certificate stating among other things the number of days the witness would be required. Here, the certificate from the trial court did explain in detail the testimony Ms. Frein was expected to give and the facts that would be proven by her appearance. In addition, it specified the date trial was expected to begin and directed the witness to contact the prosecutor regarding the days on which she would testify. Ms. Frein had testified in Defendant's previous trial, therefore she was aware of the amount of time involved.

Defendant also makes other arguments regarding the admission of Ms. Frein's testimony, but these arguments are not supported with citation to authority, therefore we decline to address them.

Thus, we cannot say the trial court abused its discretion when it determined that the State had made a good faith effort, exercising reasonable diligence to ob-

tain the presence of the witness. Point denied.

### Admission of Audiotaped Conversation

■ In his sixth point relied on, Defendant argues that the trial court erred in overruling his objection to the admission of an audiotape recording between himself and Mr. Hoover. He argues that there was improper foundation because the audiotape was a copy of the original, but the maker of the copy did not testify as to the audiotape's authenticity.

At trial, defense counsel objected to the audiotape because "the proper foundation hasn't been laid." Defense counsel then asked the witness to clarify if it was the original recording or a copy. The witness stated that it was a copy and defense counsel objected "Same objection, Judge." Although it appears that Defendant is attempting to argue about the authentication of the audiotape recording, he does not make a specific authentication objection. Instead, he makes only a vague foundational objection. A general objection to foundation does not call the attention of the court to the foundational aspects considered lacking and so it does not preserve the matter for review. *Clay*, 225 S.W.3d at 465.

On appeal, Defendant confuses the matter further. In his point relied on, he argues that the trial court erred in admitting the recording because "Mr. Banta testified that the recording played for the jury was a copy of the original recording and that he did not know who had made the copy." However, in the argument portion of his brief, Defendant appears to argue that the tape was not properly authenticated as a business record and cites law relating to the business records exception to the hearsay rule.

■ We find that Defendant has not preserved this point for review. At trial, he made a general foundational objection,

which was insufficient to preserve the matter for our review. Then, on appeal, he offered a hearsay argument that was not made at trial, nor encompassed in his point relied on. We do not consider arguments raised in the argument portion of the brief that were not encompassed in the points relied on. *State v. Daggett,* 170 S.W.3d 35, 42 (Mo.App. S.D.2005). Moreover, when an argument is raised in the point relied on but not developed in the argument section and the Defendant cites no authority in support of the argument, the point is deemed abandoned. *See State v. Dodd,* 10 S.W.3d 546, 556 (Mo.App. W.D.1999). Here, we find that it is unclear whether Defendant is arguing a hearsay or authentication issue as neither argument is developed. Therefore, we find this point is unreviewable. Point dismissed.

The decision of the trial court is affirmed.

LAWRENCE E. MOONEY, P.J., and BOOKER T. SHAW, J., concur.