

# In the Missouri Court of Appeals
# Eastern District

DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED99137 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | |
| ANWAR RANDLE, | ) | Hon. Robert S. Cohen |
| | ) | |
| Appellant. | ) | FILED:  October 7, 2014 |

Anwar Randle ("Defendant") appeals from the judgment of the trial court entered after a jury convicted him of trespass in the first degree, assault in the second degree, and armed criminal action.  Finding no error, we affirm.

Viewed in the light most favorable to the verdict, State v. Strong, 142 S.W.3d 702, 710 (Mo. banc 2004), the facts are as follows.  At about 1:00 a.m. on November 2, 2009, Defendant, Omoruyi Obasogie, and an unidentified man broke into a home occupied by Cameron Bass and Kena Coleman, who were asleep at the time.  Both Bass and Coleman knew Defendant but did not know Obasogie or the third man.  Bass and Coleman awoke, and Coleman went into the hallway to investigate. Bass hid in the bedroom closet after hearing voices demanding to know where he was.  Coleman was pushed into the bedroom and then pulled back out. Defendant and Obasogie entered the bedroom looking for Bass.  Defendant was holding a large bottle of vodka, while Obasogie was armed with a small handgun.   Bass came out of the closet.  Defendant and Obasogie wanted Bass to go outside.  Obasogie fired the gun but struck no one.  Bass fled

through the closet into an adjacent bedroom and ran to the window, where he saw the unidentified third man armed with a shotgun. Defendant and the unidentified man came into the bedroom where Bass was standing and they beat him respectively with the vodka bottle and the shotgun. Defendant eventually broke the vodka bottle on Bass's head. Eventually, the three intruders left.

Bass then called the police. The resulting police dispatch stated that three black males had entered a residence and shots had been fired. A St. Louis County police officer observed three black males, Defendant and the other two intruders, driving in the area. The officer initiated a traffic stop on the vehicle. Obasogie, who was driving the car, pulled over, and the unidentified man exited and fled on foot. Defendant and Obasogie remained in the car and sped away at high speed. They were later apprehended by multiple police officers in a parking lot.

Defendant was charged by information in lieu of indictment as a prior offender with one count of burglary in the first degree (Count I), one count of assault in the first degree (Count III), and two counts of armed criminal action (Counts II and IV) associated respectively with the other charges.

Bass and Coleman testified, as did several police officers from the St. Louis County Police Department who had responded to the incident. Defendant and his brother, Jamaal Randle, testified on Defendant's behalf. Defendant's version of events differed significantly from that told by Bass and Coleman. The trial court instructed the jury on burglary in the first degree, the lesser-included offense of trespass in the first degree, and on the count of armed criminal action associated with the burglary count. The trial court also instructed the jury on assault in the first degree, the lesser-included offense of assault in the second degree, and the count of armed criminal action associated with the assault count. It further instructed the jury on

2

self-defense, but refused Defendant's proffered instruction on the lesser-included offense of assault in the third degree.

The jury returned verdicts of guilty on the lesser-included offense of trespass in the first degree, the lesser-included offense of assault in the second degree, and on the armed criminal action count associated with the assault count. The jury acquitted Defendant of the armed criminal action count associated with the burglary count. The trial court sentenced Defendant to a term of imprisonment of six months in the St. Louis County Jail for trespass, and terms of seven years' imprisonment each for assault and for armed criminal action with the Missouri Department of Corrections, with all sentences to run concurrently. Defendant now appeals from this judgment.

In his first point relied on Defendant contends that the trial court erred by refusing to submit his proffered jury instruction on the lesser-included offense of assault in the third degree, Instruction "A", which was patterned on MAC-CR3d 319.16. He asserts that the failure to give his proffered instruction violated section 556.046 RSMo Cum Supp. 2007[1] as well as his constitutional right to due process and a fair trial in that assault in the third degree is a lesser-included offense of the charged count of assault in the first degree, there was a basis for acquitting him of the charged offense, first degree assault, and the lesser-included offense of second degree assault and for finding him guilty of third degree assault.

When reviewing whether a trial court erred in refusing to instruct the jury on a lesser-included offense, we view the evidence in a light most favorable to the defendant. State v. Lowe, 318 S.W.3d 812, 816-17 (Mo. App. 2010). The defendant must request the instruction on the lesser-included offense, and there must be a basis for acquittal on the greater offense in order to require the trial court to give such an instruction. Id. For there to be a basis for acquittal on

---

[1] Unless noted otherwise, all further statutory citations are to RSMo Cum. Supp. 2007.

the greater offense, there must be evidence that an essential element of the greater offense is missing, and the essential element that is lacking must be the basis for acquittal of the greater offense and the conviction of the lesser. Id. Where there is doubt as to the propriety of submitting the instruction on a lesser included offense, it should be resolved in favor of the submission of the instruction, leaving the matter to the jury to determine. Id.

However, a lesser included offense instruction is not required in all cases, as a defendant is not entitled to such an instruction unless it is supported by "'evidence of probative value and "inferences which logically flow from the evidence.'" Id. It is not necessary to give a lesser included offense instruction unless a rational, reasonable juror could draw inferences from the evidence adduced that an essential element of the greater offense had not been established. Id. Third degree assault is defined statutorily as a lesser-included charge of first degree assault and of second degree assault.

The Missouri Supreme Court has held, in essence, that there is virtually always a basis for acquittal on the greater offense because a jury has the right to disbelieve all, some, or none of the evidence, and to refuse to draw needed inferences. See State v. Jackson, 433 S.W.3d 390, 392-401 (Mo. banc 2014). There still must be a basis to convict on the lesser-included charge. Sections 556.046.2 to 556.046.3. The State concedes that there was a basis to acquit Defendant of second degree assault, as the jury did not have to believe that he shattered a bottle over Bass's head. The issue is whether there was a basis to convict Defendant of third degree assault. Defendant's proffered Instruction "A" stated that:

> As to Count III, if you do not find the defendant guilty of assault in the second degree as submitted in Instruction No. 10, you must consider whether he is guilty of assault in the third degree as submitted in this instruction.
>
> As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

4

That on or about November 2, 2009, in the County of St. Louis, State of Missouri, the defendant recklessly caused physical injury to Cameron Bass by shattering a bottle on his head, then you will find the defendant guilty under this instruction of assault in the third degree.

…

As used in this instruction, the term "recklessly" means to consciously disregard a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation.

Section 556.061(2) defines "physical injury" as "physical pain, illness, or any impairment of physical condition." The only evidence about his intent is circumstantial evidence from which the jury could infer Defendant's mental state.

Defendant argues that there does not have to be any affirmative evidence to support an instruction for the lesser-included offense, citing to State v. Pond, 131 S.W.3d 792, 794 (Mo. banc 2004). However, what that case and subsequent cases have held is that there does not have to be affirmative evidence to acquit a defendant of the greater charge; it is sufficient if the jury could disbelieve the State's evidence on any essential element. See Jackson, 433 S.W.3d at 399; Pond, 131 S.W.3d at 794. The Missouri Supreme Court observed that Pond and subsequent cases "have made lesser included offense instruction nearly universal, *at least where the differential element is one for which the state bears the burden of proof.* (Emphasis added). Jackson, 433 S.W.3d at 399. "Differential element" refers to an additional element that is part of the greater offense that is not an element of the lesser-included offense. Id. at 392. It does not refer to the different mental intent element that may exist between a greater offense and a lesser-included offense, such as "knowingly" committed an act versus "recklessly" committed an act. See id.

Under section 562.016.3, a person acts with knowledge or acts knowingly if:

(1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or

(2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

In contrast, a person is reckless or acts recklessly under section 562.016.4,

when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in that situation.

"A defendant is entitled to an instruction on any theory *the evidence establishes*." (Emphasis added). Pond, 131 S.W.3d at 794. *"If the evidence supports differing conclusions*, the judge must instruct on each. Id. (Emphasis added). This language indicates that there needs to be some affirmative evidence to convict on the lesser-included charge in order to mandate an instruction on that lesser-included charge. Bass testified that Defendant hit him on the head with the glass vodka bottle and that it broke. Coleman testified that Defendant hit Bass four or five times with the glass vodka bottle and that it shattered. Detective Louis Bouwman of the St. Louis County Police Department testified that he arrived on the scene of the incident within two minutes of the 911 call and that Bass was bleeding from his forehead and upset, visibly shaken. Defendant's version of events was that Bass jumped out of a closet with a gun and attacked him, apparently high on PCP. He stated that the gun went off, they wrestled and Defendant pushed Bass back into the closet. He said that he heard Bass moving, so he grabbed his glass vodka bottle and he threw it at Bass and the bottle shattered against the wall. The conflicting evidence, of which the jury could choose to believe some, all, or none, supports an inference that Defendant knowingly caused physical injury to Bass by shattering a glass bottle on his head, that is, his conduct of shattering a glass bottle on Bass's head was "practically certain" to cause

6

physical injury as defined by section 556.061(2). Based on Defendant's testimony, there was evidence from which the jury could have believed that he committed no crime at all and did not shatter the glass bottle on Bass's head, but rather against the wall. However, there is no evidence that supports an inference that Defendant recklessly caused physical injury to Bass, that is he merely consciously disregarded a substantial and unjustifiable risk that Bass would suffer physical injury by shattering a glass bottle on his head. The trial court did not err in refusing to submit Defendant's proposed Instruction "A" to the jury. Point denied.

In his second point relied on Defendant argues that the trial court erred, or in the alternatively, plainly erred in excluding evidence of Bass's reputation for violence because exclusion violated his constitutional rights to due process, a fair trial, and to present a defense. Defendant avers that evidence of Bass's alleged reputation for violence was relevant and material to his theory of self-defense as to Counts III and IV as his reputation tended to show that Bass was the initial aggressor and Defendant acted in lawful self-defense. He claims that his trial counsel made an adequate offer of proof, and alleges that the exclusion of this evidence prejudiced him by depriving him of the chance to fully present his case for lawful self-defense to the jury.

The State made several motions in limine, one of which was to exclude evidence about Bass's use of PCP and violent reputation, which Defendant did not learn about until after the incident. The State asserted that this evidence from several witnesses was irrelevant. The trial court agreed and sustained the State's motion to exclude such evidence. Defendant did not make an offer of proof during the evidentiary portions of the trial. Rather, it was not until the instruction conference after the close of all evidence that Defendant's trial counsel told the trial

7

court what her investigator had learned from one witness, Jarrick Zoumach, who had been subpoenaed. Defendant's trial counsel stated:

> …My investigator informed me that Mr. Zoumach did not appear in court yesterday, because his father advised my investigator that he was arrested the preceding night. Was currently incarcerated, but he didn't know which jail he was in. The only thing he would have been able to say was that he knows Cameron Bass around the time of the incident. Cameron tried to sell Jarrick two guns. He knew Cameron from the Walnut Park area. Cameron carried guns, he carried a .38 and a .32-caliber. Cameron smokes PCP, weed and drinks, that would be the extent of what he informed my investigator.

Assuming *arguendo* that a hearsay offer of proof of a witness who apparently would not have been available to testify would be a sufficient offer of proof, it was not timely made, and accordingly was not preserved. Accordingly, only plain error review is possible.

Plain errors affecting substantial rights may be considered when the court finds that manifest injustice or miscarriage of justice has occurred Rule 30.20. There is no manifest injustice or miscarriage of justice. A victim's reputation for violence, even if unknown to the defendant, is admissible where the defendant has asserted self-defense and the evidence is being offered to show that the victim was in fact the initial aggressor. State v. Gonzales, 153 S.W.3d 311, 312-13 (Mo. banc 2005).. Assuming the truth of all that Zoumach would have purportedly testified about, it would only show that Bass likes to drink, that he uses drugs, and that he owns guns. None of these things would have shown that Bass had a reputation for violence, and accordingly it was not relevant. Point denied.

In his third point relied on Defendant asserts that the trial court plainly erred in holding the instruction conference without him where he did not waive his appearance at the conference because this violated his rights to due process, a fair trial, and to appear and defend himself. Defendant claims that the trial court was aware that he wanted to argue his own case to the jury, yet it held the instruction conference without him, and he was

8

substantially prejudiced because this deprived him of any meaningful opportunity to provide input on the jury instructions, it failed to give him adequate notice regarding which instructions were being submitted and which ones were refused, and otherwise deprived him of the opportunity to present his defenses, as opposed to the defenses presented by his trial counsel.

Defendant concedes that this claim of error was not preserved, and requests plain error review by this Court. As previously noted, this Court may consider plain error review when it finds that a manifest injustice or miscarriage of justice has occurred. Rule 30.20. Plain error review is discretionary. State v. McCleary, 423 S.W.3d 888, 896 (Mo. App. 2014). Plain error is error that is clear, evident, and obvious, and whether such error exists is based on the facts and circumstances of each case. Id. The purported error must have had a decisive effect on the jury's determination. Id.

We apply the plain-error rule sparingly, and it does not justify appellate review of every claim that has not been properly preserved. Id. Plain-error review is a two-step process. Id. In the first step, we determine if the asserted claim of plain error facially establishes substantial grounds to believe that a manifest injustice or miscarriage of justice has occurred. Id. If we find that there are facially substantial grounds, then we proceed to the second step of the analysis, and engage in plain error review to determine if a manifest injustice miscarriage of justice actually occurred. Id.

In the present case the record is devoid of any request by Defendant or his trial counsel that he be present at the instruction conference. The record is also absent of any action by the trial court to exclude Defendant from the instruction conference. Defendant avers that if he had been at the instruction conference he could have requested that the term

9

"knowingly" be defined in the Instruction No. 10, the verdict director for the second degree assault count. He does not show how this would have changed the outcome, given that "knowingly" is a term within the comprehension of the ordinary reasonable juror and that his defense was that he did not strike Bass over the head with a glass bottle, but rather threw it at him, shattering it on the wall and not on Bass's head. Defendant also asserts that if he had been at the instruction conference he could have requested an instruction on third degree assault using language that the jury could find him guilty of third degree assault if the jurors believed beyond a reasonable doubt that he "attempted to cause physical injury to Cameron Bass by shattering a glass bottle on his head,…." Defendant posits that the trial court could not have refused to submit an instruction on third degree assault as a lesser included charge using this language. The trial court still could have refused such an instruction. Defendant testified that he did not strike Bass with the glass bottle, not that he struck him in the head with a glass bottle and tried to cause physical injury to him, but failed to do so. In addition, Bass was injured, suffering at the very least a cut from the glass bottle. Defendant also does not show how his alleged lack of notice about the instructions, those submitted and those refused, altered the outcome. Nothing in the record indicates that he lacked time to prepare his closing argument or that he wanted additional time, or that his argument would have been different from his assertion that he was acting in self-defense. Defendant does not show how he was unable to argue his own defenses, as opposed to those articulated by his trial counsel, or how being at the instruction conference would have enabled him to fully present his defenses. He merely makes conclusory allegations. Nothing in the record shows that Defendant suffered a manifest injustice. Point denied.

10

The judgment of the trial court is affirmed.

_____
CLIFFORD H. AHRENS, Judge

Glenn A. Norton, J., concurs.
Lawrence E. Mooney, P.J., dissents in separate opinion.

11



# In the Missouri Court of Appeals
# Eastern District

**DIVISION ONE**

STATE OF MISSOURI,          )      No. ED99137
                                )
         Respondent,      )      Appeal from the Circuit Court
                                )      of St. Louis County
vs.                              )
                                )      Honorable Robert S. Cohen
ANWAR RANDLE,          )
                                )
         Appellant.      )      Filed:  October 7, 2014

<u>DISSENT</u>

I find it difficult to know what thoughts pass through another's mind.  I certainly lack the State's clairvoyance in appellate fact-finding and inference-drawing.  Thus, I will assume that the State's failure to adhere to the binding precedents of our Supreme Court is the result of mere recklessness.

The State acknowledges that the defendant timely requested the instruction on assault in the third degree, and that a basis exists in the evidence for acquitting him of assault in the second degree.  Thus, the sole remaining issue is whether a basis exists in the evidence for convicting the defendant of assault in the third degree.  Sec. 556.046.3 RSMo. (Supp. 2013);[1] *State v. Jackson*, 433 S.W.3d 390, 396 (Mo. banc 2014).

---

[1] All statutory references are to RSMo. (2000) except as otherwise indicated.

Here, the defendant asked that the jury be instructed on the alternative submission that he recklessly caused physical injury to the victim. The State concedes that sufficient evidence exists to convict the defendant of assault in the third degree. Indeed, the State also acknowledges that Section 562.021.4 conclusively provides that "[w]hen recklessness suffices to establish a culpable mental state, it is also established if a person acts purposely or knowingly."

Thus, the State boldly argues, although substantial evidence exists that the defendant committed assault in the third degree, no basis exists for convicting the defendant of assault in the third degree. I do not even understand the State's argument. How can it be that substantial evidence of a crime exists, but no basis exists for conviction? It seems a mere subterfuge to avoid submitting the question of the defendant's mental state to the trier of fact for resolution. In *State v. Jackson*, our Supreme Court held that the jury had an unfettered right not to infer the presence of a differentiating factual element.[2] *Id*. at 401. Thus, the defendant had a right to have the jury consider a lesser-included offense. *Id*. at 392. Remarkably, here the State would deny the jury the right not to infer the presence of a differentiating mental element.[3] As in *Jackson*, the defendant had a right to have the jury consider the lesser-included offense.

---

[2] If the State believes *Jackson* is incorrectly decided, its remedy is to ask our Supreme Court to revisit the question, or to ask the legislature to amend the statutory scheme. The State's remedy is not to ask this Court to rely on a distinction without a difference.

[3] The State also misunderstands the meaning of recklessness. The fact that a defendant may have intentionally performed an act is not inconsistent with recklessness. A defendant may exhibit recklessness that "circumstances exist or a result will follow." Sec. 562.016.4. The defendant here asserted self-defense. As our Supreme Court instructed, "reckless conduct is not inconsistent with the intentional act of defending one's self, if in doing so one uses unreasonable force." *State v. Beeler*, 12 S.W.3d 294, 299 (Mo. banc 2000). *See also State v. Thomas*, 161 S.W.3d 377 (Mo. banc. 2005); *State v. Pulley*, 356 S.W.3d 187 (Mo. App. E.D. 2011).

I conclude it was error to fail to submit the lesser-included offense of assault in the third degree. Thus, I would reverse the conviction for assault in the second degree. Further, because of this error with the predicate offense of felony assault, I would also reverse the accompanying conviction for armed criminal action. I would remand these counts for a new trial before a correctly-instructed jury.

I respectfully dissent.

_____
LAWRENCE E. MOONEY, PRESIDING JUDGE