

# In the Missouri Court of Appeals
# Eastern District
## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED98906 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Montgomery County |
| vs. | ) | |
| | ) | Honorable Keith M. Sutherland |
| GEORGE DEWEY McCLEARY, III, | ) | |
| | ) | |
| Appellant. | ) | Filed: March 11, 2014 |

The defendant, George McCleary, appeals the judgment entered by the Circuit Court of Montgomery County following his conviction by a jury of attempt to manufacture a controlled substance, namely methamphetamine, in violation of section 195.211 RSMo. (Supp. 2012), for which the trial court sentenced him to 15 years of incarceration. The defendant challenges the trial court's denial of his motion to suppress physical evidence and incriminating statements, and the trial court's permitting the State to question defense witness Mary Mehrle about a prior municipal shoplifting violation. We affirm the trial court's judgment.

## Factual and Procedural History

On March 9, 2010, Jeff Doerr, a detective with the Warren County Sheriff's Department, was conducting surveillance across the street from a Walgreen's store in Warrenton to see if people entering the store might be reasonably suspected of involvement with methamphetamine. He was looking for those he either previously had

contact with in connection with methamphetamine or those who had the distinctive appearance of a methamphetamine user. Detective Doerr observed the defendant enter and exit the store, and return to his truck with a white bag in hand. Further investigation revealed that the truck the defendant was driving was registered to a person known to be associated with methamphetamine manufacturing and who shared the defendant's last name.

Detective Welschmeyer of the Warren County Sheriff's Department then observed the truck enter a parking lot for a strip mall several blocks south of Walgreen's. Detective Doerr arrived to watch the parking lot and observed the defendant and Mary Mehrle leaving the Dollar General store with a yellow bag. Detective Doerr then observed the defendant drive to Chic Lumber where he and Mehrle exited the store with a brown bag and drove east toward Wright City. After receiving a call from Detective Doerr, Lieutenant Schoenfeld inquired at Chic Lumber and learned that the defendant had bought plastic tubing. Knowing that persons involved with methamphetamine commonly go from store to store to purchase supplies for manufacturing the drug, Detective Doerr followed the defendant's truck as it proceeded toward Wright City. Detective Doerr observed the defendant make a left turn without using his turn signal, and requested that Detective Welschmeyer, who was following Detective Doerr in a marked patrol car, make the traffic stop.

Detective Welschmeyer also observed the defendant make a left turn without signaling, and initiated a traffic stop. The State presented at trial the audio recording of the traffic stop and Detective Welschmeyer's exchange with the defendant. Within the first two minutes of the stop, Detective Welschmeyer asked the defendant and Mehrle

what they were doing that day, took the identification of both, and asked whether there was anything in the truck that he needed to know about, such as weapons or drugs. The defendant replied that there was not. At about two minutes into the stop, Detective Welschmeyer requested a record check of the defendant and Mehrle. At about three minutes into the stop, Detective Welschmeyer again asked whether there was anything in the truck that he needed to know about. Detective Welschmeyer asked if the defendant had a problem with him taking a look in the truck, and the defendant replied "[n]o, there's nothing in there" and a few seconds later, "[n]o drugs whatsoever." About thirty seconds later, the defendant gave Detective Welschmeyer consent to search his person. All of this occurred within the first four minutes of the stop.

In the truck, Detectives Welschmeyer and Doerr found a Dollar General bag containing Kingsford lighter fluid, a brown bag containing plastic tubing, and a Walgreen's bag containing instant cold packs. In plain view on the front seat was a piece of loose-leaf paper containing a list of several items, namely "Kingsford," "fire," lye, batteries, salt, and cold packs.[1] Detective Doerr recognized the list as a recipe for methamphetamine that was missing only the pseudoephedrine, and the defendant had in his possession three of the items commonly associated with methamphetamine production—namely the lighter fluid, tubing, and cold packs.

At about six and one-half minutes into the stop, Detective Welschmeyer placed the defendant under arrest and read him his *Miranda* warnings.[2] The results of the record checks came in about eight minutes into the stop. The defendant told the detectives that he had just been released from prison for manufacturing methamphetamine, was in need

---

[1] Sulfuric acid is commonly referred to as "fire" within methamphetamine circles.
[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

of money, and would not be paid until the end of the week. He explained that he had made a bad decision in agreeing to purchase the items on the list in return for payment. The defendant showed the officers the residence where he had agreed to deliver the items. When the officers later returned to the residence, they found an anhydrous ammonia generator made from cold packs.

The State charged the defendant as a persistent drug offender with attempt to manufacture a controlled substance, specifically methamphetamine. The defendant filed a motion to suppress the physical evidence seized and any incriminating statements he made. The trial court denied the defendant's motion after an evidentiary hearing. The defendant also filed a motion in limine which sought, *inter alia*, to prevent the State from questioning defense witness Mary Mehrle about a municipal shoplifting violation. The trial court granted this portion of the defendant's motion in limine unless Mehrle opened the door by testifying to the effect that she had never been arrested or been in trouble.

At trial, the defendant's girlfriend, Mary Mehrle, testified as the only defense witness. She explained that she bought lighter fluid because she planned to barbecue that evening, and she bought plastic tubing for an aquarium she had just purchased. Mehrle testified that the defendant told her he was going into Walgreen's to get something for his knee pain. She then described the traffic stop and how the lieutenant told her over and over to tell the officers the real purpose of the plastic tubing, and how she was handcuffed and placed in the patrol car. Mehrle disclosed that she had a DWI and a misdemeanor trespassing conviction.

On cross-examination, the State challenged Mehrle's recollection of the events. The State then asked Mehrle if she had taken notes or made audio recordings during the

incident, and Mehrle replied that she had not. On redirect, the defense questioned Mehrle about the significance of the events and her memory of them.

> Q. Miss Mehrle, was this the only event in your life that happened like this, that you had this kind of experience being stopped and being interrogated by the police and have your boy friend [sic] hauled off to jail?
> A. Yes.
> Q. Would an event like that tend to stick in your memory?
> A. Very much.
> Q. You weren't involved in a bunch of other cases making a bunch of other arrests of other people; were you?
> A. No.
> Q. That's very easy for you to remember what happened?
> A. Very, yeah. It sticks there.

At a sidebar, the State contended that Mehrle had opened the door to cross-examine her about her municipal shoplifting violation because she "just testified that she's never been in a situation like this with the police interrogating her. I think she's opened the door to the stealing from Wal-Mart." The defendant argued that the door had not been opened, that the State's characterization of the question and the witness's response was neither what he had asked nor what the witness had testified. The trial court responded that "[i]t's not the exact same situation, it can be just a similar situation. I think you've opened it up." The trial court overruled the defendant's objection and allowed the State to cross-examine Mehrle on that subject. The State asked Mehrle if she remembered "being detained for stealing staples, trash bags, trash bags [sic], pseudoephedrine, shirts[,] and baby wipes" from Walmart. The State then elicited evidence that the police gave Mehrle a ticket for the stealing, and that she pleaded guilty to the offense. The defendant did not specifically object to the State's reference to pseudoephedrine in the cross-examination. The State agreed that it would not mention the pseudoephedrine shoplifted

5

from Walmart in its closing argument. However, we do not have a transcript of the State's closing argument in the record before us.

The jury found the defendant guilty of attempt to manufacture a controlled substance, namely methamphetamine. The trial court sentenced the defendant as a persistent drug offender to 15 years of incarceration. The defendant appeals.

## Discussion

In two points on appeal, the defendant challenges the trial court's denial of his motion to suppress physical evidence and incriminating statements he made during the traffic stop and the trial court's permitting the State to question defense witness Mehrle about a prior municipal shoplifting violation.

### *Denial of Motion to Suppress*

In his first point, the defendant asserts the trial court erred in denying his motion to suppress physical evidence and incriminating statements he made during the traffic stop. He argues that the officers illegally expanded the scope of their initial traffic investigation without reasonable suspicion that he was committing or had committed a crime.

We review a trial court's ruling on a motion to suppress in the light most favorable to the ruling, and we defer to the trial court's determinations of credibility. *State v. Stover*, 388 S.W.3d 138, 149 (Mo. banc 2012). We limit our review to determining whether substantial evidence supports the decision. *Id*. In reviewing the trial court's decision overruling a motion to suppress, we consider the evidence presented at both the suppression hearing and at trial in order to determine whether sufficient evidence exists in the record to support the trial court's ruling. *State v. Pike*, 162 S.W.3d 464, 472

(Mo. banc 2005). Whether conduct violates the Fourth Amendment is an issue of law that we review *de novo*. *Stover*, 388 S.W.3d at 149.

The Fourth Amendment to the United States Constitution guarantees citizens the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. A "seizure" occurs when the totality of the circumstances surrounding the incident indicates that a reasonable person would not have believed he was free to leave. *State v. Pesce*, 325 S.W.3d 565, 569 (Mo. App. W.D. 2010). A routine traffic stop based on the violation of a state traffic law is a justifiable seizure under the Fourth Amendment. *Stover*, 388 S.W.3d at 149. Such a seizure is constitutional so long as the police do no more than they are legally permitted and objectively authorized to do. *Id*. An officer has authority to check the driver's license and registration, ask the driver about his destination and purpose, and request that the driver sit in the patrol car. *Id*. Although officers may detain a person for a routine traffic stop, such does not justify indefinite detention. *Id*. A seizure can become unconstitutional if the detention lasts beyond the time necessary to conduct a reasonable investigation of the traffic violation. *Id*.

Most traffic stops resemble the kind of brief detention authorized in *Terry v. Ohio*, 392 U.S. 1 (1968), both in duration and atmosphere. *Arizona v. Johnson*, 555 U.S. 323, 330 (2009). In the context of a traffic stop, *Terry*'s requirement of a lawful investigatory stop is met whenever it is lawful for officers to detain a vehicle and its occupants, pending inquiry into a vehicular violation. *Id*. at 327. The officers need not have any additional cause to believe that any occupant of the vehicle is involved in criminal activity. *Id*.

7

Here, Detective Welschmeyer observed the defendant commit a traffic violation by making a left turn without signaling. When an officer observes a traffic violation and stops the vehicle, *Terry*'s requirement of a lawful investigatory stop is met, even absent additional cause to believe that criminal activity is occurring. *Id*. The defendant argues, however, that after stopping him for failing to use his turn signal, the officers expanded the scope of the initial investigation when, instead of timely issuing a traffic citation or warning, they asked the defendant to exit the truck and requested consent to search. He further argues that the officers lacked specific and articulable facts to warrant any investigation beyond the original purpose of the traffic stop.

A lawful roadside stop begins when officers pull over a vehicle for investigation of a traffic violation. *Id*. at 333. The temporary seizure of the occupants of a vehicle ordinarily continues, and remains reasonable, for the duration of the stop. *Id*. The stop normally ends when officers have no further need to control the scene and so inform the occupants that they are free to leave. *Id*. An officer may inquire into matters unrelated to the justification for the traffic stop, and such inquiries do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop. *Id*. An officer may at any time ask a subject whether he has contraband in the vehicle, and may ask for permission to search. *Pesce*, 325 S.W.3d at 569. If the subject consents without coercion, the Constitution does not prohibit the following search. *Id*. Thus, an officer is not required to have articulable facts to justify additional questioning unrelated to the initial justification for the stop. Rather, the issue is whether the additional questioning measurably extends the duration of the stop. In this case, it did not.

The audio recording of the traffic stop and Detective Welschmeyer's exchange with the defendant reveals that Detective Welschmeyer obtained the defendant's consent to search the truck a little more than three minutes after initiating the stop. Within the first two minutes of the stop, Detective Welschmeyer asked the defendant and Mehrle what they were doing that day, asked for the identification of both in order to run record checks, and asked whether there was anything in the truck that he needed to know about, such as weapons or drugs. These were permissible inquiries. *See Stover*, 388 S.W.3d at 149 (officer has authority to check driver's license and registration and ask driver about his destination and purpose); *see also Pesce*, 325 S.W.3d at 569 (officer may at any time ask subject whether he has contraband in vehicle). At about two minutes into the stop, Detective Welschmeyer requested record checks on the defendant and Mehrle. At about three minutes into the stop, Detective Welschmeyer again asked whether there was anything in the truck that he needed to know about. Detective Welschmeyer asked if the defendant had a problem with him taking a look in the truck, and the defendant replied that he did not because there was nothing in the truck, "no drugs whatsoever." This entire exchange occurred within the first four minutes of the stop.

Any contention that Detective Welschmeyer's inquiries and request for consent to search measurably extended the duration of the stop is meritless. The officers completed these inquiries and obtained consent to search in less than four minutes, even before receiving the results of the record checks. The officers' inquiries and search of the defendant's truck were lawful, and the trial court did not err in overruling the defendant's motion to suppress. We deny the defendant's first point.

*Impeachment of Defense Witness*

In his second point, the defendant claims the trial court erred in allowing the State to question defense witness Mary Mehrle about a prior conviction because the conviction was actually an inadmissible municipal violation for shoplifting. Furthermore, the defendant contends, the State exceeded the scope of permissible inquiry by injecting details of the violation, specifically that Mehrle had purportedly stolen pseudoephedrine. The defendant argues that identification of pseudoephedrine was particularly damaging to the defense because Detective Doerr had already testified that pseudoephedrine was the only ingredient required to manufacture methamphetamine that was missing from the list found in the defendant's truck.

The defendant's point addresses two issues: 1) admission of evidence that Mehrle pleaded guilty to a municipal shoplifting violation; and 2) admission of evidence that pseudoephedrine was involved in that incident. The defendant objected to admission of Mehrle's municipal violation, arguing that the door had not been opened to that information when Mehrle testified that she had never before been in a situation where the police stopped and interrogated her and arrested her boyfriend. The defendant failed to specifically object, however, when the State brought out the details of the municipal violation, namely that Mehrle had purportedly been detained for stealing pseudoephedrine, among other items.

A trial court possesses broad discretion to admit or exclude evidence. *State v. Taylor*, 407 S.W.3d 153, 157 (Mo. App. E.D. 2013). We will not disturb the trial court's exercise of this discretion unless it is clearly against the logic of the circumstances. *Id.* The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. *Id.*

Generally, municipal-court convictions that are unrelated to the case being tried are inadmissible. *State v. Campbell*, 868 S.W.2d 537, 539 (Mo. App. E.D. 1993). Here, however, the defendant asked Mehrle "was this the only event in your life that happened like this, that you had this kind of experience being stopped and being interrogated by the police and have your boy friend [sic] hauled off to jail?" Mehrle replied "[y]es." The purpose of this line of questioning was to establish that Mehrle could remember so many details of the events at issue because "this kind of experience" was unique for her.

After hearing argument from both parties, the trial court ruled that the situation involving Mehrle's detention for shoplifting shared enough similarity to "being stopped and being interrogated by the police and have your boy friend [sic] hauled off to jail" to render her shoplifting violation admissible. The trial court's ruling is neither clearly against the logic of the circumstances nor so unreasonable as to indicate a lack of careful consideration. The trial court did not abuse its discretion in determining that the two situations shared enough similarity to allow evidence of Mehrle's municipal shoplifting violation.

We next consider the revelation of the details of Mehrle's municipal violation. This issue is not preserved for our review because the defendant failed to specifically object to the reference to pseudoephedrine at trial. Accordingly, we can review this issue only for plain error. We have the authority and the discretion to review plain errors affecting substantial rights if we determine that manifest injustice or miscarriage of justice has occurred. Rule 30.20. Plain error is error that is evident, obvious, and clear, and we determine whether such errors exist based on the facts and circumstances of each case. *State v. Moore*, 411 S.W.3d 848, 858 (Mo. App. E.D. 2013). The alleged error must

11

have a decisive effect on the jury's determination. *Id*. We will find a decisive effect if there exists a reasonable probability the verdict would have been different but for the alleged error. *Id*.

The plain-error rule is to be applied sparingly and does not justify review of every point that has not been properly preserved. *State v. Irby*, 254 S.W.3d 181, 192 (Mo. App. E.D. 2008). Plain-error review involves a two-step analysis. *Id*. The first step is to determine whether the asserted claim of plain error facially establishes substantial grounds to believe that a manifest injustice or miscarriage of justice has occurred. *Id.* If facially substantial grounds are found to exist, we then move to the second step of the analysis, and engage in plain-error review to determine whether manifest injustice or a miscarriage of justice actually occurred. *Id.*

When evidence of prior convictions is admissible for purposes of impeachment, the scope of cross-examination is limited to prevent the cross-examiner from delving into the details of the crime leading to the prior conviction. *State v. Aye*, 927 S.W.2d 951, 955 (Mo. App. E.D. 1996). The cross-examiner may elicit the nature, date, and place of each prior crime and the resulting sentence. *Id*.

By injecting the details of Mehrle's shoplifting violation, the State exceeded the scope of proper cross-examination. It was unnecessary to delve into the details of the items involved in the municipal shoplifting violation in order to impeach Mehrle's credibility. The existence of the municipal shoplifting conviction and related detention and interrogation themselves could have accomplished the same goal. Furthermore, Mehrle disclosed on direct examination that she had had a DWI prior to the events of March 9, 2010 and that she also had a conviction for misdemeanor trespassing.

Therefore, even absent further questioning by the State about these two matters, the jury could have reasonably inferred that Mehrle had, in fact, been stopped and interrogated by police on another occasion. Thus, the State did not need to adduce evidence of the municipal shoplifting violation to impeach Mehrle's credibility in this regard.

We are also troubled by the State's mention of pseudoephedrine, and we do not believe it occurred by happenstance. The record suggests that the State was eager to adduce evidence of Mehrle's municipal shoplifting violation precisely so that it could adduce evidence that one of the items purloined in that violation was purportedly pseudoephedrine. The fact that the witness had shoplifted was of minimal value to the State; the fact that she had shoplifted pseudoephedrine was far more damning. Even though the door may have been opened to the existence of the municipal ordinance violation, that opening did not extend to the details of that offense.

And here the details of the offense implicated the witness, who was also the defendant's girlfriend, in a prior theft of pseudoephedrine. Pseudoephedrine is commonly understood to be needed for one method of manufacturing methamphetamine. And the State highlighted this as the one item missing from the shopping list found during the traffic stop of the defendant. The jury may have inferred that the defendant's girlfriend and the only defense witness was herself involved in the manufacture of methamphetamine—both previously and at the time of the traffic stop. As such, the evidence that the State presented as impeachment evidence may have also been adduced to demonstrate the propensity of the defendant's girlfriend to commit the charged offenses. And, of course, demonstrating the propensity of the defendant's companion to

13

commit the charged offense could reflect on the defendant's propensity. Generally, such evidence is inadmissible. *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011).

Although the asserted claim of plain error facially establishes substantial grounds to believe that a manifest injustice or miscarriage of justice has occurred, based on the circumstances of this case, we find no manifest injustice or miscarriage of justice actually occurred. *Irby*, 254 S.W.3d at 192. First, the evidence against the defendant, including his admissions, was overwhelming. In addition, the State made only one reference to pseudoephedrine in its cross-examination of Mehrle. Finally, the defendant has not provided us with a transcript of the State's closing argument, but the record reflects the State agreed in advance that it would not mention the pseudoephedrine in closing. The appellant has the duty to ensure that the record on appeal includes all of the evidence and proceedings necessary for us to determine the questions presented. *State v. Simino*, 397 S.W.3d 11, 15 n.2 (Mo. App. S.D. 2013); *see also* Rule 30.04(a). Because the defendant did not file a transcript of the State's closing argument with this Court, we will infer that the closing argument was favorable to the trial court's ruling and unfavorable to the defendant's argument. *Simino*, 397 S.W.3d at 15 n.2. It does not appear that the State unduly emphasized the details of the violation with its single reference to pseudoephedrine.

Because of the overwhelming evidence of the defendant's guilt and the fact that the reference to pseudoephedrine was not overemphasized, we find the error alleged did not have a decisive effect on the jury's determination and no reasonable probability exists the verdict would have been different but for the alleged error. We deny the defendant's second point.

## Conclusion

The trial court did not err in overruling the defendant's motion to suppress his statements made during the traffic stop and the fruits of the search of the defendant's vehicle. The trial court did not abuse its discretion in admitting evidence of Mehrle's municipal shoplifting violation after the door was opened to such evidence. Furthermore, the trial court did not plainly err in allowing the State's single reference to pseudoephedrine in connection with the evidence of Mehrle's shoplifting violation. We affirm the trial court's judgment.

_____
LAWRENCE E. MOONEY, PRESIDING JUDGE

ROBERT G. DOWD, JR., J., and
SHERRI B. SULLIVAN, J., concur.